UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KATHERINE KENNEDY,

    Plaintiff,                                  Civil Action No. 05-72642

v.                                          HON.  ARTHUR J. TARNOW
                                             U.S. District Judge
                                             HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Katherine Kennedy brings this action pursuant to 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for disability and disability insurance benefits under the Social Security Act (Tr. 51-53).  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).   I recommend that Defendant's Motion for Summary Judgment be GRANTED, and Plaintiff's Motion for Summary Judgment be DENIED for the reasons set forth below.

## PROCEDURAL HISTORY

On April 19, 2002, Plaintiff filed an application for Disability Insurance Benefits (DIB),  alleging an onset of disability date of November 15, 2000 (Tr. 51-53).  After denial

of her initial claim, Plaintiff filed a timely request for an administrative hearing, conducted on July 1, 2004 in Oak Park, Michigan before Administrative Law Judge (ALJ) Henry Perez. Plaintiff, represented by attorney Antonia Skatikat, testified. (Tr. 419-449). Lawrence Zatkin, acting as Vocational Expert (VE), also testified (Tr. 450-455). On December 3, 2004, ALJ Perez found that although Plaintiff was unable to perform any of her past relevant work, she retained the capacity to perform a significant number of jobs in the national economy (Tr. 27). On January 28, 2005 the Appeals Council denied review (Tr. 6-8). Plaintiff filed for judicial review of the final decision on July 5, 2005.

## BACKGROUND FACTS

Plaintiff, born October 30, 1966, was age thirty-eight when the ALJ issued his decision (Tr. 51). She graduated from high school and attended two years of college (Tr. 63). She worked previously as an automotive designer (Tr. 58). Plaintiff alleges an onset date of November 15, 2000 as a result of Fibromyalgia, irritable bowel syndrome, and depression (Tr. 57).

### A. Plaintiff's Testimony

Plaintiff, divorced, testified that she lived in Centerline, Michigan with her two children, ages fourteen and twelve (Tr. 420). In addition to receiving a high school diploma, she reported that she had a certificate in auto design (Tr. 420). She indicated that in her last two years of employment before ceasing work in November, 2000 she had been discharged from various companies because of her absenteeism (Tr. 421). She reported that she currently received food stamps and Medicaid (Tr. 420).

Plaintiff stated that her most recent position required her to lift up to one hundred pounds, estimating that the job's average lifting requirement was fifty pounds (Tr. 423). She added that her position also obliged her to bend and crawl on a regular basis (Tr. 423). She testified that she left her last job because symptoms of Fibromyalgia and periodic incontinence interfered with her job duties (Tr. 424).

She reported that she first experienced symptoms of Fibromyalgia in 1989 but had not received a diagnosis until 1995, adding that in 1994, her medical treaters also found that she experienced myofascial syndrome of the abdominal wall, and had since received a diagnosis of depression (Tr. 425-426). She stated that she received additional diagnoses of irritable bowel syndrome and irritable bladder in 2000 (Tr. 426). She added that in the past eighteen months that she also experienced headaches (Tr. 427-428). She compared her symptoms of Fibromyalgia to the discomfort created by rheumatoid arthritis, indicating that her arms, legs, back, and feet were all affected by Fibromyalgia (Tr. 428). She indicated that she experienced pain most acutely in her right arm, explaining her need for a brace, adding that Fibromyalgia also obliged her to wear a knee brace and use a cane, and that her symptoms were intensified by cold weather (Tr. 432, 439). She stated that abdominal problems required her to wear a girdle and that symptoms of irritable bowel syndrome obliged her to wear adult diapers at night (Tr. 430, 433).

Plaintiff alleged that she had not had a pain-free day in fifteen years (Tr. 429). She testified that she rarely attended family and social events due to discomfort (Tr. 429). She indicated that she now experienced at least one severe migraine headache a week (Tr. 431).

She reported that depression also prevented her from socializing, cleaning her house, or gardening (Tr. 431). She stated that she saw her treating physician approximately once a month and had recently been referred to a gynecologist (Tr. 435).  She added that she had met with a gastroenterologist two or three times (Tr. 436).  She testified that she met with a psychologist once a week and a psychiatrist every six to eight weeks (Tr. 437).  She reported that she had undergone physical therapy (Tr. 437).

Plaintiff indicated that she obtained temporary relief from discomfort by taking hot baths (Tr. 438).  She testified that she currently took twelve medications, some of which created drowsiness and blurred vision (Tr. 439-440).  She stated that her limitations prevented her from shopping regularly, cleaning her house, or gardening (Tr. 441, 446). She opined that due to her condition, she would be unable to work for even two hours a day (Tr. 445).   She stated that she could sit for no more than five minutes without experiencing discomfort, stand for two minutes, and walk for a maximum of forty to fifty feet (Tr. 449). She indicated that she was unable to lift even ten pounds (Tr. 449).

### B.   Medical Evidence

In February, 1998, Plaintiff sought treatment from Anthony P. Baron, M.D., for Fibromyalgia (Tr. 319).  While notes from Plaintiff's visits with Dr. Baron in February, May, August, and October, 2001 are largely illegible, Plaintiff's medication records from the same period show that Dr. Baron prescribed Zoloft, Trazodone, Cyclobenzaprine, Propacet, Zanaflex, and Dicyclomine (Tr. 277-285).

In March, 2002,  Plaintiff sought mental health treatment for depression and anxiety

(Tr. 334). Plaintiff told Pravin V. Soni, M.D., that she had experienced depression and substance abuse as a teenager, adding that she feared falling into debilitating depression (Tr. 330). Dr. Soni noted that Plaintiff appeared anxious, with a neat and clean appearance and good eye contact (Tr. 331). She found that Plaintiff experienced an impaired concentration and attention span, but appropriate abstract thinking (Tr. 332). Dr. Soni gave Plaintiff a guarded prognosis, assigning her a GAF of 50, and recommending psychotropic medication and psychotherapy[1] (Tr. 333).

In November, 2002, a Psychiatric Review Technique completed by Rom Kriauciunas, Ph.D., noted that Plaintiff experienced an affective disorder (Tr. 204). He found that Plaintiff's experienced only mild limitations in activities of daily living and in maintaining social functioning, but experienced moderate difficulties in maintaining concentration, persistence and pace (Tr. 214). A Mental Residual Functional Capacity Assessment completed on the same day indicates that Plaintiff's ability to understand and remember detailed instructions; carry out detailed instructions; ability to maintain attention and concentration for extended periods; and ability to respond appropriately to changes in the work setting were moderately limited (Tr. 218). The report concluded by stating that Plaintiff retained the mental residual functional capacity to perform "simple tasks on a sustained basis" (Tr. 220). The same month, Plaintiff's counseling notes show that

---

[1] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* ) (4th ed.2000).

absenteeism from treatment, along with her elder son's legal problems hindered her improvement (Tr. 320).

In December, 2002, L. Banerji, M.D., performed a consultive examination, noting that Plaintiff complained of neck, arm, and leg pain (Tr. 345). Plaintiff reported that she continued to wash dishes, cook, dust, sweep, vacuum, but could not mop (Tr. 345). She stated that she was unable to lift more than ten pounds, but did not use an assistive device (Tr. 345). Plaintiff reported that she had experienced migraine headaches for the past year and had suffered from irritable bowel syndrome for the past nine years (Tr. 346). Dr. Banerji commented that Plaintiff alleged a history of generalized body ache, but did not present evidence of fibromyalgia, adding that she did not exhibit tender points (Tr. 348). He noted that Plaintiff had received a diagnosis of depression (Tr. 348). He concluded that Plaintiff retained the ability to stand, bend, push, pull, button clothes, tie shoes, dress, make a fist, pick up a coin or pencil; write, squat and arise; get on and off the examining table; and climb stairs (Tr. 351).

The same month, a state medical examiner completed a Residual Functional Capacity Assessment, finding that Plaintiff retained the ability to lift twenty pounds occasionally; ten pounds frequently; stand, walk, or sit for six hours in an eight hour workday; and unlimited abilities to push and pull (Tr. 223). The assessment found that Plaintiff should be limited to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling, noting that Plaintiff retained a normal gait and retained an active lifestyle unless experiencing a bout of Fibromyalgia (Tr. 224, 227). The report further noted that despite Plaintiff's allegations

of fibromyalgia, no tender points had been identified (Tr. 224).

In February, 2003, Plaintiff sought treatment from Jeffrey Rochlen, M.D., complaining of a sore throat (Tr. 381). Dr. Rochlen noted that Plaintiff smoked, and had been diagnosed with severe depression and Fibromyalgia (Tr. 381). Plaintiff revisited Dr. Rochlen in April and May, 2003 for refills of Darvocet and Imitrex (Tr. 379, 381). He advised her to quit smoking (Tr. 279, 381). The same month, Dr. Baron composed a one-sentence letter, indicating that between November, 2000 and October, 2002, Plaintiff was unable to work (Tr. 375).

In October, 2003, a mental health summary indicated that Plaintiff experienced "stressors" which contributed to her condition, including irritable bowel syndrome, Fibromyalgia, economic problems, and single parenthood (Tr. 404). In December, 2003 psychiatrist Sylvia Hanson, M.D., noted although Plaintiff continued to experience depression, she demonstrated moderately good insight and judgment "[a]dequate for decision making" (Tr. 397). She concluded that although Plaintiff experienced "[o]ngoing stressors" that she was coping "well" with life (Tr. 398). Dr. Hanson assigned Plaintiff a GAF of 50 (Tr. 398).

In March, 2004, Plaintiff began physical therapy (Tr. 390-391). May, 2004 progress notes indicate that Plaintiff was able to tolerate up to thirty minutes of exercise, experienced reduced stiffness in the lumbar back, and only minimal tenderness over the cervical and lumbar spine (Tr. 388). Plaintiff's therapist, noting that her progress had been slowed by migraines and irritable bowel syndrome, advised her to continue therapy (Tr. 388).

In May, 2004, Plaintiff sought treatment for diarrhea from gastroenterologist Ronald J. Rasansky, D.O., (Tr. 382). He noted that until recently, Plaintiff had symptoms of irritable bowel syndrome "well under control," stating that she should undergone a colonoscopy (Tr. 384). Results of the procedure, performed the same month, indicated "no evidence of surface epithelial damage or thickening of the subepithelial collagen layer," but that "increased number of lamina propria eosinophils raises the possibility of hypersensitivity or allergic response" (Tr. 385).

### C. Vocational Expert Testimony

VE Lawrence S. Zatkin testified that Plaintiff's former work ranged from the sedentary to heavy level of exertion, classifying her jobs as a computer-aided body designer as skilled (Tr. 451). He indicated that approximately 7,500 such positions existed in the local economy at the sedentary level, with approximately 20,000 in the statewide economy (Tr. 451). The ALJ then posed the following question to the VE:

> "Taking Claimant's age, education and work experience into account, assume that such a person has an exertion limitation of lifting 20 pounds occasionally, 10 pounds frequently. We impose further limitations of occasional climbing, balancing, stooping, crouching, kneeling, and crawling. Jobs that would provide for routine production and stress and simple job assignments. And because of this, if we put the individual at the unskilled level, can such a person be expected to perform Claimant's past relevant work?"

(Tr. 451-452). The VE stated that given the above limitations, Plaintiff could not perform her past work or transfer her job skills to other positions, but could perform unskilled work at the light exertional level, including 20,000 manufacturing jobs and 15,000 service jobs in the greater metropolitan area, with 40,000 and 25,000 of such jobs found respectively in

the statewide economy (Tr. 452). He added that if Plaintiff's testimony pertaining to her *exertional* limitations were fully credited, she could still perform a range of unskilled sedentary jobs including 6,500 bench jobs, and 4,500 service jobs found in the metropolitan area (Tr. 453). He testified that if he took into consideration all of the *non-exertional* limitations alleged by Plaintiff she would be unable to perform any job, due to absenteeism, frequent trips to the bathroom, and severe migraine headaches (Tr. 454). The VE testified that his findings were consistent with the information found in the Dictionary of Occupational Titles (DOT), with the exception of his finding that Plaintiff would require a sit-stand option(Tr. 454).

### D.     The ALJ's Decision

Based on Plaintiff's April 19, 2002 application, ALJ Perez held that Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 27-28). Citing Plaintiff's medical records, he found that Plaintiff experienced Fibromyalgia, irritable bowel syndrome, abdominal myofascial syndrome, migraine headaches, and depression  (Tr. 23). The ALJ held that these impairments were considered severe based on the requirements of 20 C.F.R. § 404.1521, but found that they did not meet or medically equal one of the impairments found in Part 404 Appendix 1 Subpart P, Regulations No. 4, including sections 5.07 and 12.04 (Tr. 23).

The ALJ found that while Plaintiff was unable to perform her past work, she retained the residual functional capacity (RFC) to perform a range of unskilled work at the light exertional level, limiting postural activities such as climbing, stooping, crouching, balancing,

kneeling, and crawling to an occasional basis as well as limiting her to "simple job assignments with routine production/stress" (Tr. 25).

He concluded although Plaintiff's non-exertional limitations prevented her from performing a full range of light work, Plaintiff could perform a significant number of jobs in the national economy, including unskilled light manufacturing jobs and unskilled light service jobs, finding the occurrence of approximately 35,000 such jobs in the regional economy and 65,000 in the State of Michigan (Tr. 27).

The ALJ found Plaintiff's subjective complaints of limitations "not credible," noting that medical evidence of record did not support her allegations (Tr. 24). He observed that although she claimed concentrational difficulties, she maintained focus during her testimony, had demonstrated only sporadic compliance with mental health treatment, and that her complaints of medication side effects stood uncorroborated by her physicians' notes (Tr. 25).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way,

without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Credibility

Plaintiff contends that the ALJ erred by discounting her allegations of limitations, arguing that the administrative decision reflects his failure to "grasp the impact of fibromyalgia and its various symptoms." *Plaintiff's Brief* at 13. She also maintains that the ALJ improperly supported his credibility determination by noting that she kept her appointments for mental health treatment only on a sporadic basis, arguing that her physical ailments regularly prevented her from outside activities. *Id.*[2]

*Social Security Ruling* (SSR) 96-7p states that the ALJ's decision must be based on specific reasons for the findings of credibility. *Id*. These reasons must be supported by substantial evidence in the record. *Howard v. Commissioner of Social Security,* 276 F.3d 235, 242 (6th Cir. 2002); *Heston v. Commissioner of Social Security,* 245 F.3d 528, 536 (6th Cir. 2001); *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994).

An ALJ's credibility determination is also guided by SSR 96-7p, which further describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986) "First, the adjudicator must consider

---

[2]In addition to the issues presented above, Plaintiff argues that her disability claim is supported by the VE's statement that her non-exertional limitations render her disabled. *Plaintiff's Brief* at 18; *citing* Tr. 454. However, that specific finding was premised on the assumption, later rejected in the administrative decision, that all of Plaintiff's allegations should be fully credited (ALJ: Now, *if* I find Claimant's testimony to be credible . . . ." (emphasis added) (Tr. 453)) rather than on the hypothetical question which later formed the basis of the residual functional capacity (RFC), found at Tr. 451-453.

whether there is an underlying medically determinable physical or mental impairment. . .that can be shown by medically acceptable clinical and laboratory diagnostic techniques" Second, SSR 96-7p mandates that:

> "once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limited effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." *Id.*

C.F.R. §404.1529(c)(3) lists the factors to be considered in making a credibility determination, including daily activities, "precipitating and aggravating factors," treatment received for relief of symptoms, and additional considerations relevant to functional limitations. 20 C.F.R. § 404.1529(c)(3).

As a general rule, the courts cede enormous latitude to the ALJ's credibility determinations. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993). In general, the ALJ's finding is entitled to deference by the reviewing court. *Richardson, supra,* 402 U.S. at 401. In reviewing the findings of the ALJ, the evidence must be reviewed as a totality, examining the record as a whole. *Mowery v. Heckler,* 771 F.2d 966, 970 (6th Cir. 1985).

Although Plaintiff's pre-disability diagnosis of Fibromyalgia satisfies the first step of the *Duncan* test, substantial evidence, properly culled from the record and discussed at

length in the administrative decision, supports the ALJ's rejection of the type and severity of symptoms alleged by Plaintiff, thus failing the second portion of the same test. The ALJ did not dispute that Plaintiff experienced Fibromyalgia, but he found that "the medical evidence does not support her allegations of an inability to perform any work" (Tr. 24). Further, in conformance with SSR 96-7p, the ALJ supported his credibility determination with evidence drawn from the record. He pointed out that although Plaintiff claimed that she could not concentrate to the extent necessary to perform full time employment, she did not demonstrate concentrational problems during her testimony (Tr. 24). Although Plaintiff arrived at the hearing with both an arm brace and cane, none of her physicians of record noted that she required assistive devices (Tr. 24). The ALJ commented during the hearing that her claim that she did not engage in meaningful amounts of any activity stood at odds with the answers she submitted in an "Activities of Daily Living"(ADL) form which stated that she continued to read, watch movies, attend her sons' sporting events, shop on a weekly basis, and perform light household chores (Tr. 71, 446).[3] Further, Plaintiff's earlier admission that she continued to perform a number of household and parental activities on an ongoing basis belies her claim that her failure to attend regularly scheduled meetings with mental health care providers can be attributed to her physical ailments. The ALJ's credibility

---

[3]The ADL form completed by Plaintiff alleges that climbing stairs caused "terrible pain and muscle spasms," but reported to Dr. Banerji that she could climb two flights of stairs (Tr. 345). Other portions Dr. Banerji's report contradict her administrative testimony. She told Dr. Banerji that she continued to wash dishes, make beds, cook, dust, sweep, and vacuum (Tr. 345).

determination, properly articulated and supported by record evidence, does not contain grounds for a remand.[4]

The Plaintiff also faults the ALJ for giving weight to Dr. Kriauciunas' opinion that she retained the ability to perform "simple tasks on a sustained basis," arguing that the psychiatrist overstepped his authority by issuing a "vocational opinion rather than a psychiatric opinion." *Plaintiff's Brief* at 16. However, in arguing thus, she ignores the obvious point that the intrinsic purpose of submitting her mental health records for a Mental Residual Functional Capacity Assessment is to determine whether and under what conditions she can work.[5] Likewise, Plaintiff's argument that the ALJ failed to give consideration to

---

[4]This Circuit recognizes that legitimate cases of Fibromyalgia, which often eludes detection using conventional diagnostic tools, mandate an alternative test which places greater weight on the treating physician's opinion, in spite of the absence of objective medical evidence. *Preston v. Secretary of Health and Human Services*, 854 F.2d 815, 817 -818 (6th Cir. 1988). However, a diagnosis of Fibromyalgia, in and of itself, does not imply disability. *See Potts v. Secretary of Health and Human Services,* 1 F.3d 1241, 1993 WL 303363, 6 (6th Cir. 1993) (no evidence of record indicated that the plaintiff's fibromyositis was disabling). Similarly, Plaintiff's allegation of disability due to Fibromyalgia is supported only by Dr. Baron's unelaborated, one-sentence letter which states that between November, 2000 and October, 2002, Plaintiff was unable to work (Tr. 375), permissively rejected by the ALJ on the basis that it stood unsupported by any clinical findings (Tr. 25).

[5]This Court has found in the past that moderate difficulties in maintaining concentration, persistence, or pace, as found by Dr. Kriauciunas (Tr. 214) may be inconsistent with jobs requiring production quotas. Although the hypothetical question did not include a limitation on pacing requirements, the VE found that Plaintiff could perform a significant number of jobs in the national economy (15,000 service jobs), independent of his finding that she could perform 20,000 manufacturing jobs. Assuming, *arguendo*, that moderate deficiencies in concentration, persistence, or pace prevented Plaintiff from performing any of the manufacturing jobs, she would still be able to perform the 15,000 service jobs. The Sixth Circuit has found has that as few as 1,350-1,800 jobs in the local

her mental health records subsequent to Dr. Kriauciunas' November, 2002 findings is without merit. To the contrary, the ALJ cited Dr. Hanson's findings from a December, 2003 examination which stated that Plaintiff "demonstrated good memory and no difficulty with calculations," noting further that progress notes from May, 2004 indicated that Plaintiff's condition showed improvement (Tr. 23, 409). Further, the ALJ also considered and discussed more recent medical records pertaining to her physical ailments. He cited March, 2004 records showing that Plaintiff experienced an "exacerbation" of both Fibromyalgia and irritable bowel syndrome, noting however, that two months of physical therapy improved her symptoms of Fibromyalgia and that none of Plaintiff's medical records supported the level of limitations she alleged due to irritable bowel syndrome (Tr. 24). The ALJ's observation that Plaintiff had not presented subsequent evidence to contradict a December, 2002 finding she could perform a range of light work stands supported by substantial evidence.

This Court notes in closing that its conclusion recommending the grant of summary judgment to the Commissioner is not intended to trivialize Plaintiff's legitimate impairments. However, the overriding question in this appeal is whether the Commissioner's decision was supported by substantial evidence. Based on a review of this record as a whole, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative level, *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court. by this Court.

---

economy constituted a significant number. *Born v. Secretary of Health & Human Services,* 923 F.2d 1168, 1174 (6th Cir. 1990)*, citing Hall v. Bowen,* 837 F.2d 272, 275 (6th Cir.1988).

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED. Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen

-17-

                                         R. STEVEN WHALEN  
                                         UNITED STATES MAGISTRATE JUDGE

Dated: March 31, 2006

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on March 31, 2006.

                                         S/Gina Wilson  
                                         Judicial Assistant